[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Morris v. Morris,* Slip Opinion No. 2016-Ohio-5002.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-5002

MORRIS, APPELLEE, *v.* MORRIS, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Morris v. Morris,* Slip Opinion No. 2016-Ohio-5002.]

*Divorce—Modification of spousal support—Continuing jurisdiction—R.C. 3105.18(E)—A trial court does not have jurisdiction under Civ.R. 60(B) to vacate or modify an award of spousal support in a decree of divorce or dissolution when decree does not contain reservation of jurisdiction to modify award—If parties' separation agreement, incorporated into a decree of dissolution, reserves jurisdiction to modify, a party is limited to seeking relief from judgment under Civ.R. 60(B)(1), (2), or (3) and may not seek relief under Civ.R. 60(B)(4) or (5)—Court of appeals' judgment affirmed.*

(No. 2014-0688—Submitted March 24, 2015—Decided July 19, 2016.)

CERTIFIED by the Court of Appeals for Greene County,

No. 2013-CA-29, 2014-Ohio-734.

_____

**KENNEDY, J.**

{¶ 1} This case was accepted as a certified conflict between judgments of the Second District Court of Appeals and the Tenth District Court of Appeals. The Second District certified the issue in conflict as follows:

> "Does a trial court have jurisdiction under Civ.R. 60(B) to vacate or modify an award of spousal support in a decree of divorce or dissolution where the decree does not contain a reservation of jurisdiction to modify the award of spousal support pursuant to R.C. 3105.18(E)?"

139 Ohio St.3d 1427, 2014-Ohio-2725, 11 N.E.3d 283, quoting 2d Dist. Greene No. 2013-CA-29 (Apr. 3, 2014).

{¶ 2} The conclusion of the Second District that relief under Civ.R. 60(B)(4) is unavailable is consistent with the Ohio Constitution, the mandates of the General Assembly, and our precedents. Accordingly, we hold that a trial court does not have jurisdiction under Civ.R. 60(B) to vacate or modify an award of spousal support in a decree of divorce or dissolution when the decree does not contain a reservation of jurisdiction to modify the award of spousal support pursuant to R.C. 3105.18(E). Moreover, based on our precedents, if the parties' separation agreement, incorporated into a decree of dissolution, reserves the jurisdiction of the court to modify, a party is limited to seeking relief from judgment under Civ.R. 60(B)(1), (2), or (3); a litigant may not seek relief from the decree under Civ.R. 60(B)(4) or (5). *See Knapp v. Knapp*, 24 Ohio St.3d 141, 493 N.E.2d 1353 (1986), paragraph two of the syllabus; *In re Whitman*, 81 Ohio St.3d 239, 245, 690 N.E.2d 535 (1998).

{¶ 3} We therefore answer the certified question in the negative and affirm the judgment of the Second District Court of Appeals.

**Facts and Procedural History**

**{¶ 4}** On July 25, 2000, appellee, Jill Morris, and appellant, Michael Morris, jointly filed a petition for dissolution of marriage in the Greene County Court of Common Pleas. The petition alleged that the parties had been married since 1985 and had three children born of the marriage. A separation agreement entered into by the parties was attached and incorporated into the petition. The separation agreement included the following provision:

> The parties agree that the Husband shall pay as and for spousal support the sum of $1,300.00 a month for [the Wife's] lifetime. Said spousal support shall commence with the month a final decree is rendered herein and continue for until [sic] the Wife dies or the Husband dies, whichever event occurs first. The Court shall not have continuing jurisdiction on this subject. For income tax purposes, the Husband shall NOT claim this spousal support as support but treat it as property settlement and the Husband shall pay all the income taxes on same.

**{¶ 5}** On October 10, 2000, the trial court entered a decree of dissolution approving and incorporating the separation agreement that the parties had attached to their petition.

**{¶ 6}** Less than a year after the dissolution was finalized, appellant filed a motion for relief from judgment pursuant to Civ.R. 60(B)(1), (3), (4), and/or (5). Among other matters, the motion requested that the spousal-support order be vacated. The trial court denied appellant's motion and stated with respect to spousal support that "jurisdiction was not retained, as to the amount or the duration."

**{¶ 7}** On March 22, 2012, almost 11 and a half years after the dissolution was finalized, the prosecutor's office filed in the trial court a motion for contempt of court based in part on appellant's failure to abide by the spousal-support provision of the separation agreement. In response, appellant filed a motion for relief from judgment pursuant to "Civ.R. 60(B)(4) and/or (5)," requesting that the trial court vacate the award of spousal support in the parties' separation agreement.

**{¶ 8}** Appellant's motion was based on a series of employment-related events in his life that caused his annual income to become increasingly lower than it had been at the time of the dissolution. During the 11 and a half years, his annual income decreased from about $100,000 to less than $4,000.

**{¶ 9}** Following a hearing held on the contempt motion, a magistrate issued two separate decisions and orders, granting the contempt motion and dismissing appellant's motion for relief from judgment. In dismissing appellant's motion, the magistrate determined that Civ.R. 60(B) relief was not available because the trial court had not retained jurisdiction to modify the spousal-support award.

**{¶ 10}** Overruling appellant's objections, the trial court adopted the decision of the magistrate. From that decision, appellant timely appealed to the Second District Court of Appeals. The court of appeals affirmed the trial court's decision as to this issue.

**{¶ 11}** Thereafter, the Second District granted appellant's motion to certify conflict, concluding that its holding in this case was in direct conflict with the holding of the Tenth District in *Noble v. Noble*, 10th Dist. Franklin No. 07AP-1045, 2008-Ohio-4685. We agreed and ordered the parties to brief the issue as framed by the Second District.

**Analysis**

*I. Divorce and Dissolution Generally*

**A. Divorce**

{¶ 12} The 1802 Ohio Constitution included no provision for divorce or spousal support. *Dillingham v. Dillingham*, 9 Ohio App. 248, 259 (1st Dist.1917). Instead, the legislature would pass a special act providing for the divorce of a married couple. *Id.*

{¶ 13} In 1824, legislation was first enacted vesting this court with exclusive jurisdiction to grant a divorce when one of the enumerated causes for divorce was demonstrated. 22 Ohio Laws 341. The act also provided for custody, child support, and spousal support. *Id.* Eventually, in 1853, jurisdiction to grant a divorce was vested in the courts of common pleas. *See* 51 Ohio Laws 377.

{¶ 14} The divorce statutes have gone through countless iterations since 1824. Today, there are 11 grounds on which divorce may be granted for cause. *See* R.C. 3105.01. In resolving a complaint for divorce, a trial court is required to make a determination of separate property and marital property, a property-division award, a determination of the allocation of parental rights and responsibilities and child support, and—after the property is divided—an award of spousal support, if any. *See* R.C. 3105.171, 3109.04, 3105.21, and 3105.18.

{¶ 15} The parties may also enter into a separation agreement that fully resolves all issues or that leaves certain issues for the trial court to determine. *See, e.g.*, *Eddington v. Eddington*, 10th Dist. Franklin No. 14AP-572, 2015-Ohio-1233, ¶ 3. Even if the parties partially or fully settle their divorce, the trial court can

"find the separation agreement fair, just, and reasonable or equitable, and incorporate it by reference so that it becomes a part

of the decree. * * * [It can] reject some of the terms of the separation agreement, make an independent ruling on those issues, and incorporate the independent rulings and partial separation agreement into the decree. * * * [It can] reject the entire separation agreement and make its own findings regarding the issues set forth in the complaint. Lastly, the trial court may acknowledge the existence of a separation agreement, identify it and attach it to the decree, without incorporating it by reference. Under these circumstances, the trial court has not repudiated or rejected the separation agreement, nor has it found the agreement fair, just, and equitable and incorporated it into the decree. It has merely acknowledged the separation agreement and attached it as an exhibit."

(Ellipses and brackets sic.) (Emphasis deleted.) *Welly v. Welly*, 55 Ohio App.3d 111, 112-113, 562 N.E.2d 914 (6th Dist.1988), quoting *Greiner v. Greiner*, 61 Ohio App.2d 88, 99, 399 N.E.2d 571 (8th Dist.1979).

**B. Dissolution**

{¶ 16} In 1974, the General Assembly enacted provisions making dissolution of marriage permissible through a no-fault divorce proceeding. Am.Sub.H.B. No. 233, 135 Ohio Laws, Part II, 603, 615-616. An "[a]greement between the spouses [was] the linchpin of the procedure." *In re Adams*, 45 Ohio St.3d 219, 220, 543 N.E.2d 797 (1989).

{¶ 17} A petition for dissolution must be signed by both spouses and incorporate a separation agreement agreed to by both spouses. R.C. 3105.63(A)(1). The separation agreement must provide for the division of all property, spousal support, and—if there are minor children of the marriage—a

resolution of all issues pertaining to the allocation of parental rights and responsibilities and child support. *Id.*

{¶ 18} The trial court has limited authority at the dissolution hearing. *See* R.C. 3105.65. The court has no unilateral authority to modify any provision of the separation agreement. *See* R.C. 3105.65(A); *Adams* at 219. If the parties are "satisfied with the separation agreement" and "wish a dissolution of the marriage" and the court approves the agreement, then the court must grant "a decree of dissolution * * * that incorporates the separation agreement." *See* R.C. 3105.65(A) and (B). The separation agreement then becomes "a binding contract between the parties." *Adams* at 220.

## II.  Spousal Support Generally

### A.   Divorce versus Dissolution—The Trial Court's Authority to Award Spousal Support

{¶ 19} The distinctions between divorce and dissolution in the context of spousal support were succinctly stated by the Tenth District Court of Appeals in *Alban v. Alban*, 1 Ohio App.3d 146, 147-148, 439 N.E.2d 963 (10th Dist.1981):

> In a divorce case, where a divorce is granted, not only may the trial court reject, predicated upon sufficient evidence, a separation agreement entered into by the parties as being unfair, but the court may make its own determination predicated upon sufficient evidence as to the need for and amount of periodic alimony payments to be made by one spouse to the other. In other words, in a divorce case, the matter of periodic alimony payments is one for determination by the court.
>
> In a dissolution of marriage proceeding, however, the court has no jurisdiction to grant a dissolution unless the parties have entered into a separation agreement either providing for alimony or

providing that none shall be paid, which shall be incorporated into the dissolution agreement if approved by the trial court. There can be no decree of dissolution unless there is a separation agreement voluntarily agreed to by the parties and approved by the trial court. The trial court has no power to determine the amount of periodic alimony payments as the court would have in a divorce case, but, instead, this is a matter for a voluntary agreement between the parties.

**B. Divorce versus Dissolution—The Trial Court's Authority to Modify a Spousal-Support Award**

**1. Divorce**

{¶ 20} Prior to legislative enactments, a trial court's authority to modify an award of spousal support was controlled by common law. In *Olney v. Watts*, this court examined the authority of a trial court to modify a divorce decree awarding spousal support when the decree was silent as to that issue. 43 Ohio St. 499, 507, 3 N.E. 354 (1885). The *Olney* court concluded that whether a trial court had the authority to modify depended on whether the decree was in the nature of spousal support or part of the parties' agreement dividing property. *Id.* at 508. We remanded for the trial court to make that determination but held that if the spousal-support award was for ongoing support, then the obligation was subject to modification upon a change in the circumstances of the parties. *Id.* at 508-509.

{¶ 21} In considering a spousal-support agreement 16 years later in *Law v. Law*, this court held that absent "fraud or mistake," the parties' agreement was not subject to modification. 64 Ohio St. 369, 60 N.E. 560 (1901), syllabus. Reaffirming *Law*, this court in *Newman v. Newman* held that absent "mistake, misrepresentation or fraud," a spousal-support decree based on an agreement

between the parties was not subject to modification by the court. 161 Ohio St. 247, 118 N.E.2d 649 (1954), syllabus, citing *Law*.

{¶ 22} In 1959, this court held that the equitable power of the trial court may be invoked to modify a spousal-support award when a wife remarries, even though the parties had agreed to a nonterminable award of spousal support that was not part of a division of property and did not reserve jurisdiction in the trial court to modify. *Hunt v. Hunt*, 169 Ohio St. 276, 159 N.E.2d 430 (1959), paragraphs one and two of the syllabus.

{¶ 23} In *Wolfe v. Wolfe*, this court traced the foregoing historical development of the common law granting trial courts authority to modify an award of spousal support on certain conditions when the parties' agreement was silent. 46 Ohio St.2d 399, 415-416, 350 N.E.2d 413 (1976). Relying on that common law, the *Wolfe* court held that when a spousal-support award based on an agreement between the parties is not part of the property division and the decree provides that the remarriage or death of the spouse to whom support is awarded will terminate the support, there is an "implied" reservation of jurisdiction in the trial court to modify the award. *Id.*

{¶ 24} In response to *Wolfe*, the General Assembly enacted former R.C. 3105.18(D), Am.Sub.H.B. No. 358, 141 Ohio Laws, Part II, 3388, 3389, as explained in Part D below. *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, ¶ 24.

**2. Dissolution**

{¶ 25} As noted above, the ability of the parties to dissolve their marriage was statutorily created in 1974. Am.Sub.H.B. No. 233, 135 Ohio Laws, Part II, 603, 615-616. In that same act, the General Assembly authorized the trial court to "enforce its decree" and provided that the court "retains jurisdiction to modify all matters of custody, child support, visitation, and *periodic alimony payments*." (Emphasis added.) *Id.* at 616. One year later, in 1975, the General Assembly

restricted the court's ability to modify an award of spousal support when it amended the 1974 statute and removed the words "and periodic alimony payments." Am.H.B. No. 370, 136 Ohio Laws, Part II, 2451, 2452.

{¶ 26} In 1986, the General Assembly amended R.C. 3105.65(B), reinstating the trial court's authority to modify an award of spousal support but "only in accordance with [former R.C. 3105.18(D)(2)]," which is quoted below. Am.H.B. No. 358, 141 Ohio Laws, Part II, 3388, 3390.

## C. Death of the Common Law—Former R.C. 3105.18(D)

{¶ 27} In the same 1986 act, the General Assembly enacted former R.C. 3105.18(D)—the predecessor to R.C. 3105.18(E)—a single provision addressing modification of a spousal-support award, whether contained in a decree of divorce or of dissolution. 141 Ohio Laws, Part II, at 3389. In doing so, the General Assembly "manifested its intent to eliminate any distinction between the two types of * * * decrees" that operate to terminate a marriage. *Crouser v. Crouser*, 39 Ohio St.3d 177, 181, 529 N.E.2d 1251 (1988). Former R.C. 3105.18(D) provided:

> If a continuing order for periodic payments of money as alimony is entered in a divorce or dissolution of marriage action that is determined on or after the effective date of this amendment, the court that enters the decree of divorce or dissolution of marriage does not have jurisdiction to modify the amount or terms of the alimony unless the court determines that the circumstances of either party have changed and unless one of the following applies:
>
> (1) In the case of a divorce, the decree or a separation agreement of the parties to the divorce that is incorporated into the

> decree contains a provision specifically authorizing the court to modify the amount or terms of alimony.
>
> (2) In the case of a dissolution of a marriage, the separation agreement that is approved by the court and incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony.

141 Ohio Laws, Part II, at 3389. In 1991, when the General Assembly redesignated former R.C. 3105.18(D) as R.C. 3105.18(E), it merely clarified that the statute applied to awards of spousal support as well as awards of alimony. *See* Am.Sub.H.B. No. 514, 143 Ohio Laws, Part III, 5426, 5457.

**{¶ 28}** In *Mandelbaum*, we acknowledged that the General Assembly had enacted former R.C. 3105.18(D), the predecessor to R.C. 3105.18(E), in response to *Wolfe*:

> [w]hile [former R.C. 3105.18(D)] codified the common-law requirement of a change in circumstances, its foremost purpose was to declare that a trial court lacks jurisdiction to modify the amount or terms of an order of spousal support unless a provision in either the divorce decree or the separation agreement incorporated into the decree of divorce or dissolution specifically authorizes modification.

121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, at ¶ 24. Therefore, the General Assembly swept away all the common law enunciated in *Wolfe*, including this court's holding in *Law* that a trial court had the authority to modify a spousal-support award if there was fraud or mistake even though the decree did not reserve jurisdiction, 64 Ohio St. 369, 60 N.E. 560, and this court's holding in

*Newman* that a trial court had the authority to modify a spousal-support award if there was "mistake, misrepresentation or fraud" even though the decree did not reserve jurisdiction. 161 Ohio St. 247, 118 N.E.2d 649, at syllabus.

**D. Substantive Law versus Procedural Rule**

{¶ 29} Adopted by this court in 1970, Civ.R. 60 is a rule of procedure that allows a party to seek relief from a judgment on a number of grounds. Civ.R. 60(B)(1) permits relief from a judgment for, among other reasons, "mistake," and Civ.R. 60(B)(3) permits relief from a judgment for, among other reasons, "fraud [and] * * * misrepresentation." Civ.R. 60(B)(4) permits relief if "it is no longer equitable" to enforce the judgment, and Civ.R. 60(B)(5) permits relief for "any other reason justifying relief."

{¶ 30} While the 1968 Modern Courts Amendment, which added Article IV, Section 5(B) to the Ohio Constitution, conferred authority on this court "to promulgate rules relating to matters of procedure in courts of Ohio * * * the right to establish the substantive law in Ohio remained with the legislative branch." *Havel v. Villa St. Joseph*, 131 Ohio St.3d 235, 2012-Ohio-552, 963 N.E.2d 1270, ¶ 2. "Procedural rules promulgated pursuant to the Modern Courts Amendment supersede conflicting statutes that affect procedural matters but 'cannot abridge, enlarge, or modify any substantive right.' " *Id.*, quoting Ohio Constitution, Article IV, Section 5(B).

{¶ 31} In *Crouser*, this court held that R.C. 3105.18 is the substantive law that controls whether a trial court has authority to modify an award of spousal support. 39 Ohio St.3d at 178, 529 N.E.2d 1251. R.C. 3105.18(E) permits a trial court to modify a periodic payment of spousal support only if the decree of divorce or dissolution specifically provides for that authority.

{¶ 32} In contrast, Civ.R. 60(B) permits relief from a judgment under the circumstances enumerated in the rule. The requirements of the rule are not the same as the requirements of R.C. 3105.18(E). Therefore, the application of

Civ.R. 60(B) to modify an award of spousal support enlarges the substantive right conferred in R.C. 3105.18(E). The Modern Courts Amendment does not confer upon this court the authority to resurrect through a procedural rule a common-law remedy that was expressly superseded by the General Assembly in a statutory enactment. The General Assembly is the sole body responsible for the establishment of substantive law, and we cannot " 'abridge, enlarge, or modify any substantive right.' " *Havel* at ¶ 2, quoting Ohio Constitution, Article IV, Section 5(B).

### III. Case Law Regarding Modification of a Spousal-Support Award

{¶ 33} It is impossible to correctly answer the certified question without examining four decisions of this court. These precedents support the conclusion that Civ.R. 60(B) cannot be used to contravene the substantive law enacted by the General Assembly.

### A. *McClain v. McClain*

{¶ 34} In 1984, in a certified-conflict case, this court considered whether a trial court may modify a provision for periodic spousal support contained within a dissolution-of-marriage decree. *McClain v. McClain*, 15 Ohio St.3d 289, 290, 473 N.E.2d 811 (1984). The *McClain* court held that the trial court lacked jurisdiction to modify the award of spousal support. *Id.* at 291. "Just as a court lacks authority to set the original amount of alimony payments in a dissolution case, a court also lacks authority to modify the amount of alimony payments originally agreed to by the parties." *Id.* at 290.

{¶ 35} Tracing the history of R.C. 3105.65(B) and the General Assembly's amendment deleting the phrase "and periodic alimony payments" from the modification statute, the *McClain* court reasoned "from this deletion that the legislature specifically intended that a court would not retain jurisdiction to modify periodic alimony payments provided for in a separation agreement incorporated in a decree of dissolution of marriage." *Id.* at 290-291.

**B.** *Knapp v. Knapp*

{¶ 36} Two years later, this court considered *Knapp*, 24 Ohio St.3d 141, 493 N.E.2d 1353. The Knapps were granted a dissolution, and the trial court ordered their separation agreement incorporated into the decree of dissolution. The separation agreement provided for the payment of spousal support and contained a specific provision acknowledging that the parties had "freely and voluntarily" entered into the agreement with the intention to be bound and that "[n]o modification or waiver of any of the terms" would be valid absent a written agreement signed by both parties. *Id*. at 42.

{¶ 37} Almost five years later, Mr. Knapp's obligation of spousal support had lapsed into arrears, and Ms. Knapp filed a motion in contempt. In response to the motion for contempt, Mr. Knapp sought relief from judgment pursuant to Civ.R. 60(B)(4).

{¶ 38} The issue presented was whether this court's decision in *McClain* that a trial court does not have jurisdiction to modify a provision for spousal support in a decree of dissolution may be "circumvented by a motion filed pursuant to Civ.R. 60(B)(4)." *Knapp* at 142. The lead opinion in *Knapp* noted that resolution of the issue required consideration of the "two competing principles" of "finality" and "perfection": "Finality requires that there be some end to every lawsuit, thus producing certainty in the law and public confidence in the system[ ] * * *. Perfection requires that every case be litigated until a perfect result is achieved." *Id.* at 144-145. Typically, the lead opinion in *Knapp* noted, finality is placed above perfection in the "hierarchy of values." *Id.* at 145, citing Kane, *Relief from Federal Judgments: A Morass Unrelieved by a Rule*, 30 Hastings L.J. 41 (1978). Recognizing that Civ.R. 60(B) strikes a balance between these two principles, the lead opinion observed that "courts [have] broad, but not unlimited authority to set aside judgments." *Id.* at 145.

**{¶ 39}** The lead opinion in *Knapp* rejected Mr. Knapp's argument that he was entitled to relief pursuant to Civ.R. 60(B)(4) because it was " 'no longer equitable that the judgment should have prospective application' " due to his diminished financial condition and lack of understanding of the settlement agreement. *Knapp*, 24 Ohio St.3d at 145, 493 N.E.2d 1353, quoting Civ.R. 60(B)(4). "It would be inequitable *not* to give the alimony provision prospective enforcement," the lead opinion reasoned: "As the United States Supreme Court has stated, '* * * [t]here must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.' " (Emphasis and ellipsis sic.) *Id.* at 145, quoting *Ackerman v. United States*, 340 U.S. 193, 198, 71 S.Ct. 209, 95 L.Ed. 207 (1950). Additionally, the lead opinion noted that "any modification of the * * * separation agreement, other than one permitted by the Revised Code, would be inequitable because it would require the court to set aside the dissolution, and restore the marriage." *Id.*, citing *Ashley v. Ashley*, 1 Ohio App.3d 80, 83, 439 N.E.2d 911 (8th Dist.1981).

**{¶ 40}** The lead opinion in *Knapp* also recognized the perils of permitting Civ.R. 60(B) relief:

> A decision, contrary to the one we make today, would open a veritable Pandora's box of problems. For instance, litigants, armed with the knowledge that Civ.R. 60(B)(4) would relieve them of the consequences of their voluntary, deliberate choices, would be encouraged to litigate carelessly. Judgment winners would be unable to rely on their victories. Those financially able to do so could crush their less affluent adversaries under a pile of Civ.R. 60(B)(4) motions. All of this would be a subversion of judicial economy and an opening of the proverbial floodgates, causing

Ohio's courts to drown in a sea of duplicative, never-ending litigation.

*Knapp* at 145-146.

**{¶ 41}** Accordingly, a majority of the *Knapp* court foreclosed Civ.R. 60(B)(4) as a vehicle to modify an award of spousal support that is contained in a decree of dissolution: "The '* * * it is no longer equitable * * *' clause of Civ.R. 60(B)(4) will not relieve a litigant from the consequences of his voluntary, deliberate choice to enter into a separation agreement in a dissolution of marriage proceeding." (Ellipsis sic.) *Knapp* at paragraph two of the syllabus.[1]

## C. *Crouser v. Crouser*

**{¶ 42}** In *Crouser*, we considered whether a trial court had jurisdiction pursuant to Civ.R. 60(B)(4) or (5) to vacate a spousal-support award that had been incorporated into a divorce decree. 39 Ohio St.3d 177, 529 N.E.2d 1251. Importantly, the *Crouser* court characterized the issue before it as a "choice between use of substantive law adopted by the General Assembly through R.C. 3105.18 and 3105.65, and use of a procedural mechanism provided by this court under Civ.R. 60(B)(4) and (5)." *Id.* at 178. Quoting Article IV, Section 5(B) of the Ohio Constitution, the court stated, "[W]hen the General Assembly expresses its intent, procedural rules may 'not abridge, enlarge, or modify any substantive right.' " *Id.*, citing *State v. Slatter*, 66 Ohio St.2d 452, 454, 423 N.E.2d 100 (1981). As the *Crouser* court correctly held:

> The issue before us—modification of a periodic alimony award—falls within that body of law traditionally denominated as substantive, since the authority to grant or modify an alimony award in a divorce proceeding is provided under R.C. 3105.18.

---

[1] Justice Locher, who did not join the lead opinion in *Knapp*, did join the syllabus.

> The standards or requirements established by the General Assembly under this substantive law will control since the legislature has specifically provided, by statute, mechanisms for review and modification of periodic sustenance alimony awards. In contrast, Civ.R. 60(B)(4) is a procedural mechanism which allows parties to seek relief from judgments that are unmodifiable through substantive law.

*Id.* at 178-179.

{¶ 43} While *Crouser* involved the modification of a spousal-support award contained in a decree of divorce, the court found the situation in *Knapp* "analogous." *Crouser* at 179. Accordingly, the court concluded that substantive law controlled the modification of a spousal-support award contained in a divorce decree: "The mechanism for review and modification of an alimony award is properly under the substantive law of R.C. 3105.18." *Id.* at 181. The court therefore ordered that the spousal-support award be reinstated. *Id.*

**D. *In re Whitman***

{¶ 44} The final case that it is necessary to examine for a proper resolution of the issue before us today is *Whitman*, 81 Ohio St.3d 239, 690 N.E.2d 535. In *Whitman*, this court considered whether a trial court may modify a property division pursuant to Civ.R. 60(B) when the parties' separation agreement, which contained the property division and which was incorporated into the decree of dissolution, expressly provided that the agreement may be modified by the court.

{¶ 45} In *Whitman*, the separation agreement provided that " '[t]his Agreement shall not be altered, modified, or amended unless it is done so in writing, signed by both parties, or by Court Order.' " *Id.* at 239, quoting the separation agreement. Five months later, Mrs. Whitman filed a motion for relief from judgment under Civ.R. 60(B)(1), (3), and (5), seeking to vacate the entire

dissolution on the basis that "there were substantial omissions, mistakes, and misstatements in the separation agreement." *Id.* at 240. During the pendency of the motion for relief from judgment, Mr. Whitman remarried.

{¶ 46} Relying on the language "or by Court Order" of the separation agreement, we held that when "the parties have incorporated into the separation agreement a clause that allows the court to modify the agreement * * * the court has continuing jurisdiction to enforce this clause." *Id.* at 244. Because the parties had specifically reserved to the court jurisdiction to modify, "Civ.R. 60(B) is an appropriate procedural vehicle for requesting relief from a judgment * * * [and] the trial court may, in its discretion, elect to modify the property division rather than vacate the entire decree." *Id.* at 245. However, the *Whitman* court stressed that

> [i]n order to further promote finality in dissolution proceedings, today's holding is limited to motions brought under Civ.R. 60(B)(1), (2), and (3). This limitation, in effect, provides permanency to any dissolution that has remained unchallenged for one year. Civ.R. 60(B). Further, it preserves the rights of the moving party to [seek] Civ.R. 60(B) relief without sacrificing the general finality of a dissolution decree and without creating any undue hardship for the opposing party. By limiting our holding in this way, we also remain consistent with our holding in *Knapp* * * *, which precluded a party from using the "it is no longer equitable" clause of Civ.R. 60(B)(4) to modify a decree of dissolution that was entered into voluntarily.

*Id.*

### IV. The Holding in Noble v. Noble *Lacks Support in Our Precedents*

{¶ 47} A thorough examination of the conflict case *Noble*, 2008-Ohio-4685, reveals that the Tenth District Court of Appeals did not consider *Crouser* and that the law underpinning the Tenth District's holding—namely, a decision of the Eleventh District Court of Appeals—resurrected the common law as it existed in 1983.

{¶ 48} In both *Crouser* and *Noble*, the movant attempted to vacate a spousal-support award contained in a decree of divorce relying on a provision of Civ.R. 60(B) when there was no provision granting the court authority to modify. *Crouser*, 39 Ohio St.3d at 179, 529 N.E.2d 251 (movant sought relief under Civ.R. 60(B)(4) or (5)); *Noble* at ¶ 2-4 (movant sought relief under Civ.R. 60(B)(3)). The only material difference between *Crouser* and *Noble* was that the court determined the award of spousal support in *Crouser*, whereas in *Noble*, the parties' separation agreement, which was incorporated into the divorce decree, provided for spousal support. *See Crouser* at 177; *Noble* at ¶ 2.

{¶ 49} This court decided *Crouser* 20 years prior to the Tenth District's decision in *Noble*. Without distinguishing or even citing *Crouser*, the *Noble* court extended an artificial distinction between the terms "modif[y] or terminat[e]" in R.C. 3105.18(E) and "vacat[e]" in Civ.R. 60(B) by relying on *Crawford v. Crawford*, 11th Dist. Portage No. 2004-P-0065, 2005-Ohio-2360. *See Noble* at ¶ 17-18. However, this reliance was misguided.

{¶ 50} In *Crawford*, the Eleventh District held that a party who seeks relief from a judgment pursuant to Civ.R. 60(B) does "not rely upon a court's continuing jurisdiction * * * but, rather, a court's authority * * * to vacate its own judgment." *Crawford* at ¶ 22. In reaching this conclusion, the *Crawford* court relied on *McKinnon v. McKinnon*, 9 Ohio App.3d 220, 221, 459 N.E.2d 590 (10th Dist.1983), which had held that " 'Civ.R. 60(B) is different from the continuing jurisdiction of a court of domestic relations * * *. Civ.R. 60(B) is a procedure for

granting relief from a judgment not otherwise modifiable.' " (Ellipsis sic.) *Crawford* at ¶ 22, quoting *McKinnon* at 221. However, the *Crawford* court's reliance on *McKinnon* was unwarranted.

{¶ 51} *McKinnon* was decided in 1983 and interpreted the common law that was in effect at that time.[2] Three years after that decision, the General Assembly displaced the common law by enacting former R.C. 3105.18(D), 141 Ohio Laws, Part II, at 3389. *Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, at ¶ 24. In 1988, this court decided *Crouser*, holding that "[t]he mechanism for review and modification of an alimony award is properly under the substantive law of R.C. 3105.18." 39 Ohio St.3d at 181, 529 N.E.2d 1251. Therefore, the Tenth District's holding in *Noble* is unreasonable and without foundation in the law.

{¶ 52} Moreover, in a divorce proceeding, the trial court is required to ensure that a spousal-support obligation is in accord with R.C. 3105.18(C)(1), which requires a determination of the "nature, amount, and terms of payment, and duration of spousal support." In a proceeding for dissolution, the parties are required to comply with R.C. 3105.63 when drafting their separation agreement.

{¶ 53} In the realm of domestic-relations law, "modification order" has a particular meaning:

> [a] post-divorce order that changes the terms of child support, custody, visitation, or alimony. A modification order may be agreed to by the parties or may be ordered by the court. The party wishing to modify an existing order must show a material change

---

[2] Interestingly, the author of *McKinnon* interpreting the common law in effect in 1983 would later become the author of this court's 1988 majority opinion in *Crouser*, former Chief Justice Thomas J. Moyer.

in circumstances from the time when the order sought to be modified was entered.

*Black's Law Dictionary* 1157 (10th Ed.2014). Accordingly, vacating an order that awards spousal support is a modification of the award in domestic-relations parlance. "Modify" in R.C. 3105.18(E) expresses the particular meaning of the term in domestic-relations law and encompasses any action taken to change the nature, amount, terms of payment, and duration of the spousal support, including vacating the award. *See* R.C. 1.42.

{¶ 54} This is exemplified in *Crouser*. When considering whether a trial court had jurisdiction under Civ.R. 60(B)(4) or (5) to vacate an award of spousal support, this court stated, "The issue before us—modification of a periodic alimony award—falls within that body of law traditionally denominated as substantive, since the authority to grant or modify * * * is provided under R.C. 3105.18." 39 Ohio St.3d at 178, 529 N.E.2d 1251. In denying the requested relief from judgment to vacate the award, we stated, "The mechanism for review and modification of an alimony award is properly under the substantive law of R.C. 3105.18." *Id.* at 181. Accordingly, when an award is vacated, it is a modification of the order, and a modification of an order is governed by the substantive law of R.C. 3105.18. *See also Knapp*, 24 Ohio St.3d 141, 493 N.E.2d 353.

### V. The Trial Court Lacks Jurisdiction to Vacate the Dissolution Decree

{¶ 55} The *Crouser* court engaged in a thoughtful discussion of the interplay between substantive law and procedural rules, concluding that Civ.R. 60(B) may not operate to vacate an award of spousal support, because the only proper mechanism to modify such an award is the substantive law—i.e., R.C. 3105.18. *Crouser* at 178-179, 181. Nothing has changed since this court's decision in *Crouser*.

{¶ 56} Our precedent therefore establishes that substantive law controls the issue of when a trial court has jurisdiction to modify a spousal-support award contained in a decree of divorce or dissolution.  R.C. 3105.18(E) is " 'that body of law which creates, defines and regulates the rights of the parties,' " to modify an award of spousal support.  *Havel*, 131 Ohio St.3d 235, 2012-Ohio-552, 963 N.E.2d 1270, at ¶ 16, quoting *Krause v. State*, 31 Ohio St.2d 132, 285 N.E.2d 736 (1972), paragraph one of the syllabus, *overruled on other grounds by Schenkolewski v. Cleveland Metroparks Sys.*, 67 Ohio St.2d 31, 426 N.E.2d 784 (1981).

{¶ 57} In R.C. 3105.18(E), the General Assembly has established the limits of a trial court's jurisdiction to modify an award of spousal support.  And a party's request for modification falls within those statutory limits only if the parties agree or the court orders that jurisdiction be reserved.  In other words, the trial court must first determine whether the decree of divorce or dissolution contains a reservation of jurisdiction.  If the trial court lacks jurisdiction to modify, then the inquiry of the court ends there.  To permit a trial court to exercise jurisdiction on the authority of Civ.R. 60(B) in the absence of a reservation of jurisdiction would make the force of the procedural rule greater in scope than the substantive right the General Assembly established in R.C. 3105.18(E).  Because Civ.R. 60(B) is a procedural rule, it cannot override the substantive law of R.C. 3105.18(E).  *See* Ohio Constitution, Article IV, Section 5(B).

{¶ 58} There are two problematic issues that would result from a contrary conclusion.  The first is the effect of granting a Civ.R. 60(B) motion in a dissolution action.  The statement of the lead opinion in *Knapp* is just as true today as it was then—"any modification of [a] separation agreement, other than one permitted by the Revised Code, would be inequitable because it would require the court to set aside the dissolution, and restore the marriage."  *Knapp*, 24

Ohio St.3d at 145, 493 N.E.2d 1353, citing *Ashley*, 1 Ohio App.3d at 83, 439 N.E.2d 911. Moreover, the exception announced in *Whitman* has no application here. In *Whitman*, the parties' agreement, which was incorporated into the decree of dissolution, reserved jurisdiction in the trial court. 81 Ohio St.3d at 245, 690 N.E.2d 535. Because the parties had agreed that the trial court had continuing jurisdiction to modify the decree, the court had the authority to "elect to modify the property division rather than vacate the entire decree." *Id.*

{¶ 59} In the case before us today, jurisdiction to modify the decree was not reserved in the trial court. Therefore, if we reversed the court of appeals' judgment and upon remand, the trial court determined that appellant was entitled to relief under Civ.R. 60(B), then the court would be required to vacate the decree of dissolution and restore the marriage, which was terminated nearly 16 years ago. This would be antithetical to our principle of the finality of judgments, which ensures "certainty in the law and public confidence in the system's ability to resolve disputes." *Knapp* at 144-145.

{¶ 60} The second problem that would be created by a conclusion contrary to that which we reach today would be the Pandora's box that was warned against in *Knapp*. Those with foreknowledge of Civ.R. 60(B)(4) or (5) would be encouraged to litigate carelessly. Those financially able to afford continuing litigation would have the opportunity to bury their ex-spouse in a mountain of filings. Litigants would be able to attempt to relieve themselves of the financial burden of spousal-support awards, many of which were voluntary, deliberate choices.

{¶ 61} We have long recognized that a trial court has no unilateral authority to modify any provision of a separation agreement filed with a petition of dissolution that is later incorporated into a decree of dissolution. *See Adams*, 45 Ohio St.3d 219, 543 N.E.2d 797; R.C. 3105.65(A). To echo the lead opinion in *Knapp*, appellant's position would lead to "a subversion of judicial economy

and an opening of the proverbial floodgates, causing Ohio's courts to drown in a sea of duplicative, never-ending litigation." 24 Ohio St.3d at 145-146, 493 N.E.2d 1353.

**{¶ 62}** It has been nearly 28 years since this court announced its holding in *Crouser* that Civ.R. 60(B), a procedural rule, cannot override the substantive law of R.C. 3105.18. Since that time, the General Assembly has not amended R.C. 3105.18(E) to confer upon the trial court jurisdiction to modify a continuing obligation of spousal support when there is fraud, mistake, or misrepresentation. Perhaps the General Assembly is not inclined to do so because it knows that under the statutory scheme that it has enacted, in an action for divorce, a trial court always has discretionary authority to order the inclusion of a modification provision, even when the parties have reached their own full or partial agreement, *see Welly*, 55 Ohio App.3d at 112-113, 562 N.E.2d 914, citing *Greiner*, 61 Ohio App.2d 99, 399 N.E.2d 571, and because in an action for dissolution, courts should respect the parties' exclusive agreement on how to disentangle their family and financial affairs, *see* R.C. 3105.65. Absent legislative action, the authority of *Crouser* stands.

## Conclusion

**{¶ 63}** The conclusion of the Second District Court of Appeals that relief under Civ.R. 60(B)(4) is unavailable in this case is consistent with the Ohio Constitution, the mandates of the General Assembly, and our holdings in *McClain*, 15 Ohio St.3d at 290, 473 N.E.2d 811, *Knapp*, *Crouser*, and *Whitman*. Accordingly, we hold that a trial court does not have jurisdiction under Civ.R. 60(B) to vacate or modify an award of spousal support in a decree of divorce or dissolution when the decree does not contain a reservation of jurisdiction to modify the award of spousal support pursuant to R.C. 3105.18(E). Moreover, in accordance with our precedents, if the parties' separation agreement, incorporated into a decree of dissolution, reserves the jurisdiction of the court to modify, a

party is limited to seeking relief from judgment under Civ.R. 60(B)(1), (2), or (3); a litigant may not seek relief from the decree under Civ.R. 60(B)(4) or (5). *See Knapp*, 24 Ohio St.3d 141, 493 N.E.2d 1353, at paragraph two of the syllabus; *Whitman*, 81 Ohio St.3d at 245, 690 N.E.2d 535.

{¶ 64} We therefore answer the certified question in the negative and affirm the judgment of the Second District.

Judgment affirmed.

PFEIFER, O'DONNELL, LANZINGER, and BALDWIN, JJ., concur.

O'CONNOR, C.J., concurs in judgment only.

O'NEILL, J., dissents in an opinion.

CRAIG R. BALDWIN, J., of the Fifth Appellate District, sitting for FRENCH, J.

_____

**O'NEILL, J., dissenting.**

{¶ 65} In vacating a spousal-support award under Civ.R. 60(B), a court is not relying on its continuing jurisdiction under domestic-relations law but, rather, on its authority to vacate its own judgment. Civ.R. 60(B) recognizes the inherent power of all courts, including domestic-relations courts, to relieve a person of the unjust operation of a judgment entered by that court.

{¶ 66} In this case, there is a court order that, without question, has become unjust in its application, and I refuse to believe that by statute the legislature can simply say, "Tough." This is not child support. It is spousal support, and it is forever. Is justice served by taking a hard-line approach and holding that no matter what happens to these two people financially for the rest of their lives, this order can never be changed? That is not justice, it is vengeance. And as a judge, I believe it is wrong for my signature to perpetuate an injustice; therefore, I must dissent from the well-written but mistaken majority opinion.

{¶ 67} We are talking about a person's financial ruin and a former spouse using the court system to say, "We don't care." In short, I think it is wrong to base our ability to do justice on whether the phrase "the court shall retain jurisdiction" happens to have been included in the original judgment. The domestic-relations court should always be responsive enough within the support context to adjust an order as justice requires. Otherwise, why not have formulaic computer robots review the facts of every case? The job of a judge is to ensure that justice prevails. That did not happen here, and as a matter of law, I would hold that all judges in Ohio have the authority to utilize Civ.R. 60(B) when they determine that a miscarriage of justice is happening with the aid of their signature.

{¶ 68} Based on the foregoing analysis, I respectfully dissent.

_____

Flanagan, Lieberman, Hoffman & Swaim, and Richard Hempfling, for appellant.

_____